574 A.2d 631

**COMMONWEALTH of Pennsylvania**

v.

**ONE 1988 FORD COUPE VIN # 1FABP41A9JF143651 Real Estate with Dwelling House Located at 149 North Bedford Street, Carlisle, Pennsylvania.**

**Appeal of Jorge ECHEVARRIA.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1990.

Filed April 26, 1990.

Arthur T. McDermott, Carlisle, for appellant.

Syndi L. Norris, Asst. Dist. Atty., Carlisle, for Com.

Before CIRILLO, Presiding Judge, and BECK and JOHNSON, JJ.

CIRILLO, President Judge:

This is an appeal from an order of forfeiture [1] entered in the Court of Common Pleas of Cumberland

---

1. We note that Jorge Echevarria's timely filed January 6, 1989 Notice of Appeal states that he is appealing from an order "entered" on December 29, 1988. This order was actually entered on January 3, 1989. Therefore, it was an appealable final order on January 3, 1989. Pa.R.A.P. 301(a), (c). Additionally, the cover of Echevarria's brief omitted designation of the order from which the appeal was taken in

County. Appellant Jorge Echevarria was arrested and charged with unlawful possession with intent to deliver a Schedule II controlled substance, 35 P.S. § 780–113(a)(30), and unlawful possession of drug paraphernalia, 35 P.S. § 780–113(a)(32). On October 14, 1988, prior to Echevarria's criminal trial, the Commonwealth filed two forfeiture petitions seeking forfeiture of three automobiles and certain real estate allegedly belonging to Echevarria. On December 29, 1988, following a hearing on the forfeiture petitions, the Honorable George E. Hoffer determined that the property in question had been used to facilitate drug trafficking, and ordered that one of Echevarria's vehicles and his residence be forfeited to the Commonwealth.[2] This appeal was taken from that order.[3] On appeal, Echevarria raises the following five issues:

violation of Pa.R.A.P. 2172(a)(5). Although these errors are harmless here, counsel should be aware of these rules of appellate procedure.

2. We note that Echevarria was tried and convicted on both charges on January 24, 1989, after entry of the forfeiture order. Conviction of a crime is not necessary to support an order of forfeiture. *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985); *Estate of Peetros by Peetros v. County Detectives and Dist. Attorney's Office,* 341 Pa.Super. 558, 492 A.2d 6 (1985); *Commonwealth v. 1978 Toyota,* 321 Pa.Super. 549, 468 A.2d 1125 (1983). At common law, forfeiture could not attach unless there was a conviction, and evidence of that conviction was necessary to prove a forfeiture claim. *See generally,* Annotation, 38 A.L.R. 4th 515 (1985).

3. Ordinarily, post-trial motions are not filed in forfeiture cases; rather, it appears that most appeals in forfeiture cases are taken directly from the order denying or granting the forfeiture petition or the motion for return of property. *See, e.g., Commonwealth v. Two Electronic Poker Game Machines,* 502 Pa. 186, 465 A.2d 973 (1983); *Commonwealth v. One 1984 Blue/Silver Oldsmobile Car Seized from Louis Thompkins,* 389 Pa.Super. 53, 566 A.2d 612 (1989); *Commonwealth v. One 1985 Cadillac Seville,* 371 Pa.Super. 390, 538 A.2d 71 (1988); *Commonwealth v. $15,836.85–Cash,* 354 Pa.Super. 279, 511 A.2d 871 (1986); *Commonwealth v. One Electronic Poker Game Machine,* 302 Pa.Super. 350, 448 A.2d 1077 (1982), affirmed at 502 Pa. 186, 465 A.2d 973 (1983); *Commonwealth v. McDermond,* 127 Pa. Commw. 17, 560 A.2d 901 (1989); *Commonwealth v. Liquor,* 46 Pa.Commw. 490, 407 A.2d 83 (1979); *see also* 42 Pa.C.S. § 6801 *et seq.;* Pa.R.Crim.P. 324. On December 19, 1989, the Pennsylvania Supreme Court amended Pennsylvania Rule of Civil Procedure 227.1 to include the following:

NOTE: A motion for post-trial relief may *not* be filed to matters governed exclusively by the rules of petition practice.

(1) whether his due process rights were violated by the Commonwealth's failure to allege material facts in its forfeiture petition under 42 Pa.C.S. § 6802(a)(5);

(2) whether the trial court's order pursuant to 42 Pa.C.S. § 6802 was illegal because it was based on information obtained through a search warrant which violated the Pennsylvania and United States Constitutions;

(3) whether the criminologist who testified at his trial was not an expert witness in the identification of controlled substances;

(4) whether the Commonwealth failed to meet its burden of proof in demonstrating that his automobile and real estate were unlawfully used or possessed; and

(5) whether the Commonwealth's presentation of evidence regarding his cooperation with the police was prosecutorial misconduct.

▮ We will first address issues one and four, concerning forfeiture. Echevarria contends that his due process rights were violated by the Commonwealth's failure to allege material facts in its forfeiture petition as required by the Controlled Substances Forfeiture Law, 42 Pa.C.S. § 6802 ("the Forfeiture Law").[4] Section 6802(a)(5) of the Forfei-

Note, Pa.R.C.P. 227.1 (amended December 19, 1989, effective January 1, 1990) (emphasis added). Since a forfeiture proceeding is governed by the rules of petition practice, no motion for post-trial relief is filed; the appeal is taken directly from the forfeiture order.

**4.** The original law codifying common law forfeiture was enacted in 1972. Act of April 14, 1972, P.L. 233, No. 64, § 28, 35 P.S. § 780–128, effective June 14, 1972. In 1984, the statute was amended by Act of December 14, 1984, P.L. 988, No. 200, § 2, effective in 60 days. The 1984 amendments expanded the scope of the forfeiture provisions, adding "money, negotiable instruments and securities used or intended to be used to faciliate any violation of [the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 *et seq.*] [Controlled Substance Act]," to the list of property subject to forfeiture. Act of December 14, 1984, P.L. 988, No. 200 § 2. Real property was also made subject to the forfeiture provisions. *Id.* In 1988, the statute was repealed and essentially reenacted at 42 Pa.C.S. §§ 6801 *et seq.* Act of June 30, 1988, P.L. 464, No. 79, § 7, effective immediately. This statute clarified that "real property used or intended to be used to facilitate any violation of the [Controlled Substance Act], 42 Pa.C.S. § 6801(a)(6)(i)(C), and any firearm "used or intended for use to facilitate a violation of the [Controlled Substance Act]" 42 Pa.C.S.

ture Law provides that the Commonwealth's petition requesting forfeiture of seized property contain "an allegation that the property is subject to forfeiture pursuant to section 6801(a) *and an averment of material facts upon which the forfeiture action is based.*" 42 Pa.C.S. § 6802(a)(5) (emphasis added).[5]

Echevarria argues in his brief that the Commonwealth's petition fails to aver any material fact in support of the petition so as to "provide reasonable belief that the property in question was subject to forfeiture, in particular, that the Commonwealth had probable cause to believe that [a] substantial connection existed between property to be forfeited and the violation of the Controlled Substance law." Echevarria contends that the Commonwealth's assertion that he was arrested and was in possession of the property in question at that time does not satisfy the requirements of section 6802.

Section 6802(a) of the Forfeiture Law provides that every petition shall contain: (1) a description of the property seized; (2) a statement of the time and place where seized; (3) the owner, if known; (4) the person or persons in possession, if known; (5) an allegation that the property is subject to forfeiture pursuant to section 6801(a) (relating to loss of property rights to Commonwealth) and an averment of material facts upon which the forfeiture action is based; and (6) a prayer for an order of forfeiture that the property

§ 6801(a)(7), are subject to forfeiture. The 1988 statute also added that no valid lien or encumbrance was subject to forfeiture. 42 Pa.C.S. § 6801(a)(6)(iii). In addition, the statute made it clear that when an owner of property claims that a third party used the property to violate the Controlled Substance Act without his knowledge or consent, the lack of knowledge or consent must be "reasonable." 42 Pa.C.S. § 6802(j). Prior to the 1988 amendments, a person's property could be forfeited even if its owner had no knowledge of and did not consent to the prior unlawful use of the property by another person. *See, e.g., Estate of Peetros by Peetros v. County Detectives and Dist. Attorney's Office,* 341 Pa.Super. 558, 492 A.2d 6 (1985).

5. We note that there are two forfeiture petitions which are the subject of this appeal. One of the petitions concerns the automobile; the other concerns the real property. Both petitions use identical language, differing only in the references to the property in question. We therefore refer to the petitions in singular form.

be adjudged forfeited to the Commonwealth, condemned, and be ordered sold according to law, unless cause be shown to the contrary. 42 Pa.C.S. § 6802(a). Here, we are concerned with subsection (a)(5), which sets forth the requirement that the petition contain an averment of material facts upon which the forfeiture action is based.

We point out that the issue of the Commonwealth's compliance with subsection (a)(5) differs substantially from the Commonwealth's compliance with its burden of proof at the hearing on the forfeiture petition. *Compare* 42 Pa.C.S. § 6801(a) with 42 Pa.C.S. § 6801(j). Though fundamental, it appears that this distinction has been the source of some confusion in the appellant's brief. Echevarria argues in his brief that the Commonwealth failed to *prove* a substantial connection between the property and the criminal activity "by its failure to present any material facts in its petition for forfeiture."

■ Echevarria's argument is based on an incorrect premise, and is therefore misleading. The Commonwealth need only *aver* material facts in its petition; proof of the nexus between the property and the crime is required at the time of the hearing. At that hearing, the Commonwealth must prove by a preponderance of the evidence that the property in question was used to facilitate a drug transaction. *See* 42 Pa.C.S. §§ 6801(a)(4); 6801(a)(6)(i)(C); *see also Commonwealth v. Tate*, 371 Pa.Super. 611, 614, 538 A.2d 903, 905 (1988); *Commonwealth v. One 1971 Ford LTD*, 245 Pa.Super. 303, 369 A.2d 414 (1976).

In its petition, the Commonwealth avers the following: 1. On September 22, 1989, Tri–County Narcotics Task Force arrested Jorge Echevarria for various violations of the Pennsylvania Crimes Code and the Controlled Substance, Drug, Device and Cosmetic Act, 35 [P.S.] Section 780–101 *et seq.* [hereinafter the "Controlled Substance Act"]. *At the time of arrest, which coincided with the above activities, the defendant was in possession of the above-captioned vehicles [and real] property.*

2. Seizure was made at approximately 6:00 A.M. on September 22, 1988 at the time of the arrest.

3. The owner of the property, to the best knowledge of the Petitioner, is Jorge Echevarria.

4. The above-captioned property is subject to forfeiture pursuant to 42 Pa.C.S. § 6801, 6802.

(emphasis added). The question of whether the Commonwealth has averred any material facts upon which the forfeiture is based in paragraph 1 as required by section § 6802(a)(5), is arguably of merit. *Cf. United States v. 124 East North Ave.*, 651 F.Supp. 1350 (N.D.Ill.1987) (government alleges sufficient nexus between drug activity and house to provide basis for forfeiture where complaint stated house was to be used for delivery of cocaine and phone in house was regularly used to negotiate cocaine sales, because such facts constitute probable cause that property was used or intended to be used to facilitate violation of federal narcotic laws). However, Echevarria's challenge to the petition is belated. In his answer to the petition and rule, Echevarria did not raise any defect on the face of the Commonwealth's petition, nor did he file a motion to dismiss the petition. *See Commonwealth v. One 1974 Chevrolet Box–Type Truck*, 126 Pa.Commw. 173, 559 A.2d 76 (1989) (forfeiture petitions contained requisite elements as required by the forfeiture law, and thus hearing should have been held at which time the Commonwealth, as well as the owner of the property, would have been afforded the opportunity to present evidence before the trial court disposed of forfeiture petitions). Thus, we will not address the merits of this claim.

■ We now proceed to Echevarria's fourth issue. Echevarria claims that the Commonwealth's evidence at the hearing on the forfeiture petition was insufficient to prove by a preponderance of the evidence that the automobile and real property in question were used to facilitate a violation of the Controlled Substance Act. Echevarria argues that the Commonwealth's evidence failed to prove a connection

between the property and the alleged criminal act, and that therefore his due process rights were violated.

The roots of forfeiture law can be traced to the Bible: "When an ox gores a man or a woman to death, the ox shall be stoned, and its flesh may not be eaten...." Exodus 21:28. At common law, the basis for forfeiture was the concept that breach of the criminal law was a breach of the King's peace. The breach of the King's peace was viewed as justification for denying the right to ownership of certain property. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 682, 94 S.Ct. 2080, 2091, 40 L.Ed.2d 452 (1974), *citing* 1 W. Blackstone Commentaries 299. In *Calero*, the Supreme Court set forth the history of forfeiture as follows:

> At common law the value of an inanimate object directly or indirectly causing the accidental death of a King's subject was forfeited to the crown as a deodand [from the Latin Deo dandum, meaning "to be given to God"]. The origins of the deodand are traceable to Biblical and pre–Judeo–Christian practices, which reflected the view that the instrument of death was accused and that religious expiation was required. *See* O. Holmes, The Common Law, c 1 (1881). The value of the instrument was forfeited to the King, in the belief that the King would provide the money for Masses to be said for the good of the dead man's soul, or insure that the deodand was put to charitable uses. 1 W. Blackstone, Commentaries 300.

*Id.* at 680–81, 94 S.Ct. at 2090–91 (footnotes omitted); *see also Commonwealth v. Landy*, 240 Pa.Super. 458, 362 A.2d 999 (1976); Finkelstein, *The Goring Ox: Some Historical Perspectives on Deodands, Forfeitures, Wrongful Death and the Western Notion of Sovereignty*, 46 Temple L.Q. 169, 182 (1973).

"Long before the adoption of the Constitution the common law courts in the Colonies—and later in the states during the period of Confederation—were exercising jurisdiction in rem in the enforcement of [English and local] forfeiture statutes[.]" *C.J. Hendry Co. v. Moore*, 318 U.S.

133, 139, 63 S.Ct. 499, 503, 87 L.Ed. 663 (1943). These statutes provided for the forfeiture of commodities and vessels which were used in commerce in violation of the law. *Id.* at 145–148, 63 S.Ct. at 505–07. After the adoption of the Constitution, ships and cargoes involved in the violation of customs laws were made subject to forfeiture under federal law,[6] as were vessels used to deliver slaves to foreign countries,[7] and later, to deliver slaves to this country.[8]

█ Thus, forfeiture as a means of punishment and deterrence is not a novel concept. Due to the mounting drug battles faced by this country, the use of forfeiture has received widespread attention. Federal and state use of forfeiture laws has figured prominently in the attempts to curb drug trafficking and drug use.[9] Despite growing popularity, forfeitures are not favored in the law and are to be strictly construed. *See Commonwealth v. Beloff*, 166 Pa.Super. 286, 70 A.2d 689 (1950). In Pennsylvania, forfeiture in connection with a violation of the Controlled Substance Act exists by virtue of statute. "[T]he divestiture of property without compensation, in consequence of a default of an offense, ... is a method deemed *by the legislature* to restrain the commission of the offense and to aid in prevention." 36 Am.Jur.2d *Forfeitures* § 1 (emphasis added). In Pennsylvania, the forfeiture law has been enlarged consid-

---

6. Act of July 31, 1789, §§ 12, 36, 1 Stat 29 39, 47.

7. Act of Mar. 22, 1794, 1 Stat 347.

8. Act of Mar. 2, 1807, 2 Stat 426.

9. The deterrent effect of these laws is largely due to the characterization of the forfeiture action as civil. Forfeiture proceedings in Pennsylvania, while quasi-criminal in nature, are civil in form. See 42 Pa.C.S. § 6802 (forfeiture proceedings shall be in rem, in which the Commonwealth shall be the plaintiff and the property the defendant); *see also Commonwealth v. 1978 Toyota*, 321 Pa.Super. 549, 552, 468 A.2d 1125, 1126 (1983); *Commonwealth v. Crosby*, 390 Pa.Super. 140, 568 A.2d 233 (1990). One commentator has theorized that the courts' reluctance to extend constitutional rights to forfeiture claimants is due to the fact that forfeiture actions are characterized as in rem civil proceedings. *See* Rosenberg, *Constitutional Rights and Civil Forfeiture Action*, 88 Colum.L.Rev. 390 (1988). *See also* Wisotsky, *Crackdown: The Emerging 'Drug Exception' to the Bill of Rights*, 38 Hastings L.J. 889 (1987).

erably since its original enactment in 1972. *See* footnote 3, *supra*. The legislators saw fit to broaden the law as a means to combat the problem of illicit drugs. The legislators sought to "expand the ability of law enforcement agencies, both the local district attorneys and the State Attorney General, to seize real estate which is involved in drug trafficking, [and] allow law enforcement officials to seize other property which could not heretofore be seized[.]" Pa. Senate Journal, April 18, 1988, p. 2078 (Debate on Act of June 30, 1988, P.L. 464, No. 79); *see also Commonwealth v. Landy*, 240 Pa.Super. 458, 464–65, 362 A.2d 999, 1002 (1976) ("It is not only the policy of the Controlled Substance, Drug, Device and Cosmetic Act, but also the policy of our criminal law to deprive a criminal of the fruits of his illegal act."); *Commonwealth v. 1978 Toyota*, 321 Pa.Super. 549, 552, 468 A.2d 1125, 1126 (1983) ("The object of [35 P.S.] § 780–128 is to impose a penalty on those who are significantly involved in criminal enterprises in violation of the Drug Law.") (citations omitted).

 Our state constitution provides that "no person can be deprived of his life, liberty or property, unless by the . . . law of the land[.]" Pa. Const. art. 1, § 9. The "law of the land" is the legal equivalent of the due process guarantee in our federal constitution. *See* U.S. Const., amend. V; U.S. Const. amend. XIV, § 1. Although our battle against the lords and kingpins of the drug world is compelling, our focus remains fixed on the constitutional right to due process, lest it too become another casualty. Despite our government's zealous pursuit to combat drug traffic and end the destruction it breeds, we cannot lose sight of the fact that our duty is to protect the alleged drug dealer's constitutional right to fundamental fairness.[10] Said Justice

---

10. One commentator has recently traced what he describes as "the current retreat from the historic constitutional mission of shielding citizens from governmental overreaching." Wisotsky, *Crackdown: The Emerging 'Drug Exception' to the Bill of Rights*, 38 Hastings L.J. 889, ── (1987). Wisotsky notes that the "retreat results principally from continuing escalations in the paramilitary march of the War on Drugs." *Id.* at ──. He states:

Frankfurter: "The requirement of 'due process' is not a fair weather or timid assurance. It must be respected in periods of calm and in times of trouble[.]" *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 162–163, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951). We are bound to remain unswayed by public clamor or a fear of criticism, notwithstanding the national temper. *See* Code of Judicial Conduct, Canon 3.

■ The Forfeiture Law insures notice to all owners and possessors of property, provides for an opportunity to respond to the Commonwealth's forfeiture petition, both in writing and at a hearing, and sets forth the respective burdens of proof for each party. 42 Pa.C.S. § 6802(a)–(k).[11] The legislature expressly provided for these procedural protections, as well as other limitations. *See, e.g.,* 42 Pa. C.S. § 6801(a)(4)(i)–(iv); (a)(6)(ii)–(iii). *Cf. Commonwealth v. Crosby*, 390 Pa.Super. 140, 568 A.2d 233 (1990) (where forfeiture of a vehicle involved in the crime of driving under the influence occurred in the absence of notice to the defendant, and without a hearing, the court remanded for a hearing on the propriety of the forfeiture). Essential to our concept of procedural due process in a forfeiture proceeding, and the basis of Echevarria's claim here, is the Commonwealth's burden of proving by a preponderance of the evidence the connection, or nexus, between the crime and

> One of the most serious incursions into the rights of criminal defendants arises from the Department of Justice's tactic of using the criminal forfeiture provisions of the [Comprehensive Crime Control Act of 1984, 18 U.S.C. § 3142] against fees paid to defense counsel. When so used, prosecutors claim that the fee received by counsel represents derivative contraband, in other words, the proceeds of a controlled substances violation.... Even more extreme action results from pretrial orders prohibiting a defendant from transferring funds to retain counsel in the first instance.
>
> *Id.* at —— (footnotes omitted). Wisotsky points out that this cavalier attitude toward the right to counsel clause of the sixth amendment is characteristic of the "forces of justice in the War on Drugs." *Id.* at ——.

11. *See Commonwealth v. Beloff*, 166 Pa.Super. 286, 70 A.2d 689 (1950). This portion of the Forfeiture Law is substantially the same as the repealed Act. *See* 35 P.S. § 780–128 (amended, 1984).

the property subject to forfeiture at the forfeiture hearing. *See* 42 Pa.C.S. § 6802; *Petition of Maglisco*, 341 Pa.Super. 525, 491 A.2d 1381 (1985); *Commonwealth v. One 1976 Oldsmobile Cutlass Supreme*, 85 Pa.Commw. 433, 482 A.2d 686 (1984). "The limitations, rules, and safeguards established by the legislature when authorizing forfeiture of certain derivative contraband, are essential to the orderly administration of justice, to the protection of constitutional due process concerns, and to the rights of innocent third parties affected by the forfeiture." *See Commonwealth v. Crosby*, 390 Pa.Super. at 153, 568 A.2d at 240. A person need not fear that his property will be automatically forfeited to the state because he allegedly violated a provision of the Controlled Substances Act; the state must first establish that the property was used or intended to be used to facilitate a violation of the Controlled Substance Act. 42 Pa.C.S. §§ 6801(a); 6802(j). It is contrary to our notion of fundamental fairness to provide for seizure of property based only on the fact that a violation of the Controlled Substance Act has occurred. It is equally unfair to provide for constitutional safeguards and pay them no mind. *See, e.g., Commonwealth v. One 1979 Lincoln Four Door Sedan*, 344 Pa.Super. 171, 496 A.2d 397 (1985) (use of automobile to bring sandwiches and coffee to workers in clandestine laboratory used in illegal manufacture of drugs was held to provide sufficient nexus so as to justify forfeiture).[12]

With these principles and thoughts in mind, we will review appellant's due process claim. We must determine whether the evidence presented at the hearing established that it was more likely than not that Echevarria used or intended to use his car and home to facilitate a violation of the Controlled Substance Act.[13]

12. Judge Wieand dissented, stating: There was no evidence that the vehicle was used to facilitate the transportation, sale, receipt, possession, or concealment of methamphetamine.... delivery of food and beverages ... [does] not bear a direct, causal connection with the possession or manufacture of illegal drugs. *One 1979 Lincoln Four Door Sedan*, 344 Pa.Super. at 171, 496 A.2d at 397.

13. We point out that the Commonwealth's allegations were based on the use or intended use of the car and residence to facilitate a drug

At the hearing on the forfeiture petition, Detective Michael F. Strine, a police officer with the Carlisle Police Department, testified that early in 1988 he began to investigate the reports he had received about Jorge Echevarria's involvement in drug trafficking. The reports were received on June 20, 1988 via an anonymous telephone call to Crime Stoppers in Pennsylvania. The Carlisle Police Department initiated a surveillance of Echevarria's house and interviewed persons, including known drug offenders, seen frequenting the house. Detective Strine elicited the aid of a confidential informant and arranged for two controlled purchases.

Thereafter, a confidential informant, working in conjunction with the Carlisle Police Department, made two controlled cocaine purchases from Echevarria with official police funds. The first controlled cocaine purchase occurred on September 14, 1988. Just prior to the controlled purchase, Detective Strine had searched the informant. No contraband or money was found on the informant. Detective Strine then transported the informant to within two blocks of Echevarria's residence. From his vehicle, which was about one and a half blocks from Echevarria's house, Detective Strine watched the informant enter the house. The informant was inside the house for about three minutes, and then exited with Echevarria. The two men entered Echevarria's automobile, a black Ford Mustang, and drove to a nearby park. Echevarria walked a short distance away from the park and then returned to the car where the informant had waited for him. Echevarria and the informant drove back to Echevarria's house, at which time the informant got out of Echevarria's automobile. Still under surveillance, the informant went directly to a prearranged

transaction; the Commonwealth's allegations were not based on claims that the car or home were proceeds from a drug transaction. *See* 42 Pa.C.S. § 6801(a)(6)(i)(A) ("Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of [the Controlled Substance Act], and all proceeds traceable to such an exchange[,]" are subject to forfeiture to the Commonwealth).

location about a half block away where he gave Detective Strine an eighth of an ounce of cocaine.

The second controlled cocaine purchase occurred only a few days later, on September 20, 1988. Again, Detective Strine searched the informant, found no contraband or money on him, drove him to an area approximately one block from Echevarria's residence, and observed him walk into the house. This time, the informant was inside Echevarria's house for approximately twenty-one minutes. The informant then left Echevarria's house and pretended he was walking home. In his vehicle, Detective Strine followed the informant for about five minutes. The informant then returned to Detective Strine's vehicle possessing cocaine.

Both cocaine purchases were made with official police funds. On the first occasion, Detective Strine testified that he gave the informant $250.00 or $300.00. He testified that on the second occasion, he gave the informant $250.00. Detective Strine recorded the serial numbers of the currency.

On September 22, 1988, the police executed a search warrant at Echevarria's house. The officers found 84.58 grams of cocaine with a $6,766.00 to $10,150.00 street value, a triple beam balance scale (commonly use in weighing cocaine), a grinder (for chunks or rocks of cocaine), inositol powder (common cutting agent for cocaine), rifle and handgun shells, and Echevarria's wallet containing $895.00. Two one-hundred dollar bills in the wallet had the same serial numbers as the two one-hundred dollars bills that Detective Strine had given the confidential informant on September 20, 1988 to purchase cocaine from Echevarria.

The relevant provisions of the statute are as follows:

§ 6801. **Loss of property rights to Commonwealth**

(a) **Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

(4) All conveyances, including aircraft, vehicles or vessels, which are used or are intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of, property described in paragraph (1) or (2) ...

\* \* \* \* \* \*

(6)(i)(C) Real property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act, ...

42 Pa.C.S. § 6801.

The evidence presented at the hearing leads us to conclude that an illicit nexus was established. Detective Strine's testimony regarding his search of the informant prior to the controlled buys, his constant surveillance of the informant, and his search of the informant after the informant had left Echevarria's home and car on the first occasion, and after the informant had left Echevarria's home on the second occasion, establishes that that it is more likely than not that Echevarria's home and car were utilized to facilitate the first controlled purchase, and that his home was utilized to facilitate the second sale. "It is the use to which the property is put that renders property, otherwise lawful, rightful to have, use, and possess, subject to seizure and forfeiture." *Commonwealth v. One 1958 Plymouth Sedan*, 414 Pa. 540, 543, 201 A.2d 427, 429 (1964), (quoting *Hemenway & Moser Co. et al. v. Funk et al.*, 100 Utah 72, 81, 106 P.2d 779, 783 (1940), *rev'd. on other grounds*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Because Echevarria used both his vehicle and his home to facilitate the first sale of cocaine, and used his home to facilitate the second sale of cocaine, in violation of 35 P.S. § 780–113(a)(30), the forfeiture was justified under the statute. 42 Pa.C.S. § 6801(a)(4), (a)(6)(i)(c). Moreover, we point out that, although he was not required to do so, Echevarria presented no evidence to rebut the Commonwealth's proof. *See Commonwealth v. Tate*, 371 Pa.Super. 611, 538 A.2d 903 (1988) (the presumption that money discovered in close proximity to illegal controlled substance is proceeds derived

from the sale of an illegal substance was rebutted by defendant's evidence; the defendant had shown that he had drawn a certain sum of money from a particular bank and that he had not made a sale of drugs between the time of the bank withdrawal and his arrest because a lesser sum of money was found in the envelope marked with the name of the bank); *see also Commonwealth v. One Blue/Silver Oldsmobile Car Seized from Louis Thompkins,* 389 Pa.Super. 53, 566 A.2d 612 (1989) (evidence in forfeiture proceeding was sufficient to establish that owner's automobile was used to facilitate transportation, sale, receipt, possession and concealment of cocaine and marijuana; police had observed defendant's passenger buy two small plastic packets from unidentified male, and packet of cocaine was found between defendant's inner thighs when police stopped vehicle); *Commonwealth v. $15,836.85–Cash,* 354 Pa.Super. 279, 511 A.2d 871 (1986) (Commonwealth proved by a preponderance of the evidence that money was derived from illegal drug transactions, and was therefore properly forfeited, where money was found with approximately two pounds of marijuana and various paraphernalia, informant testified about numerous drug sales by defendant and stated defendant claimed to make three times his construction earnings by engaging in illegal drug dealing, and trial court properly did not credit defendant's claim that the money belonged to his mother); *Commonwealth v. 1978 Toyota,* 321 Pa.Super. 549, 468 A.2d 1125 (1983) (police officer's testimony that the informant and the defendant were in the defendant's car, that he received a signal from the informant that the drug buy had been consummated, that he arrested defendant, and the defendant told the officer that he come to sell an ounce of cocaine, was sufficient to establish by a preponderance of the evidence that defendant's car was used to facilitate transportation and possession of a controlled substance and thus forfeiture was sustained).

In his second issue, Echevarria argues that the trial court's order pursuant to 42 Pa.C.S. § 6802 was illegal

because it was based on information obtained through a search warrant which violated both the Pennsylvania and United States Constitutions. We are unable to review Echevarria's challenge to the validity of the search warrant; Echevarria has not included the search warrant and affidavit of probable cause in the record on appeal. As the trial court notes, Echevarria raised this issue in a motion to suppress evidence in his related criminal trial. Echevarria's direct appeal in that case, docketed at 511 Harrisburg, 1989, is the appropriate place for review of that issue.

Next, Echevarria argues that Lee Ann Grayson, who testified as an expert in controlled substance identification, was not qualified to testify as an expert because she was not a chemist. We disagree. The determination of the qualification of a witness to express an expert opinion is within the trial court's discretion, and its ruling will not be reversed absent an abuse of that discretion. *Commonwealth v. Mangini*, 478 Pa. 147, 159–60, 386 A.2d 482, 488 (1978). "If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he or she is qualified as an expert." *Ragan v. Steen*, 229 Pa.Super. 515, 522, 331 A.2d 724, 728 (1974).

The record reveals that Ms. Grayson, a criminalist employed by the Pennsylvania State Police, holds a Bachelor of Science degree in biology with a minor in chemistry. She received her training in the identification of drugs at both the Pennsylvania State Police Laboratory and at a Drug Enforcement Agency training seminar. She had performed between 500 and 1,000 drug analysis tests on substances suspected of being cocaine at the State Police Laboratory, and had testified as an expert on the results of those tests on thirteen occasions. Based on this foundation, we find no abuse of discretion. *Commonwealth v. Daniels*, 280 Pa.Super. 278, 421 A.2d 721 (1980).

Finally, Echevarria claims that the Commonwealth's presentation of evidence at trial regarding his cooperation with the police following his arrest was prose-

cutorial misconduct. This issue is not properly before us. The appeal here is from an order of forfeiture. Echevarria's complaints with respect to admission of testimony at trial should be raised in his appeal from judgment of sentence. That appeal is not presently before us. Accordingly, we will not review this claim.

Affirmed.