602 A.2d 486

In re KING PROPERTIES All that Certain Tract of Land Situate in the Borough of Gettysburg, County of Adams, and State of Pennsylvania known as 129 West Street, Gettysburg, Adams County, as Described with Particularity in Deed Book 504, Pages 251–252, Recorder of Deeds Office Adams County, Pennsylvania Along with All of its Improvements, Appurtenances, Buildings and Structures.

Appeal of COMMONWEALTH of Pennsylvania, OFFICE OF ATTORNEY GENERAL.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1991.

Decided Jan. 22, 1992.

Andrea F. McKenna, Deputy Atty. Gen., Appeals and Legal Services Section, for appellant.

Gary Lysaght, for appellee.

Before CRAIG, President Judge, KELLEY, J., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

The Commonwealth of Pennsylvania, Office of Attorney General (Commonwealth) appeals an order of the Court of Common Pleas of Adams County (trial court), wherein the trial court ordered that Coy King's (King's) interest in his house be forfeited pursuant to the controlled substances forfeiture provisions of Section 6801 of the Judicial Code (Code),[1] and that he be permitted to redeem his interest in that house by paying the Commonwealth thirty thousand dollars ($30,000.00). We affirm the forfeiture, but reverse that part of the order granting King a right of redemption.

On January 6, 1989, the Pennsylvania State Police staged an undercover purchase of a controlled substance at King's residence, 129 West Street, Gettysburg, Adams County, Pennsylvania. The next day, the police executed a search warrant and seized one-half ounce of cocaine mixed with inositol as well as various drug-related paraphernalia from the house.[2] On October 6, 1989, the Commonwealth filed an application for seizure warrant, wherein it requested that the trial court issue an order permitting the Commonwealth to seize the house, pending disposition of a petition for forfeiture. The trial court issued a writ of seizure against King's house on October 12, 1989. On October 17, 1989, the Commonwealth filed a petition for forfeiture of the house

1. 42 Pa.C.S. § 6801.
2. The items seized included $4,395.00 in cash (most of which was located on the bed in stacks as if someone were in the process of counting it), scissors, baggies (some of which had the corners cut off), one inch twist ties, a three to four inch long straw, an O'Haus triple beam scale, white powder residue, $7,850.00 in cash (which was wrapped in a newspaper and located in a garaged Lincoln Continental automobile), and copies of bank documents and records relating to King's purchase of the house. The trial court noted that when King purchased his house on October 14, 1988, he paid $46,365.95 in cash and mortgaged only $9,000.00.

pursuant to Section 6801(a)(6)(i)(C) of the Code, 42 Pa.C.S. § 6801(a)(6)(i)(C), which reads as follows:

**(a) Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

. . . .

**(6)(i) All of the following:**

. . . .

(C) Real property used or intended to be used to facilitate any violation of The Controlled Substance, Drug, Device and Cosmetic Act, [3] including structures or other improvements thereon, and including any right, title and interest *in the whole* or any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, *in any manner or part*, to commit, or to facilitate the commission of, a violation of The Controlled Substance, Drug, Device and Cosmetic Act, and things growing on, affixed to and found in the land. (Footnote and emphasis added.)

King pled guilty to possession of cocaine with intent to deliver on November 2, 1989. On March 20, 1990, the trial court held a hearing with regard to the Commonwealth's petition for forfeiture. The Commonwealth had the "burden of proving by a preponderance of the evidence the connection, or nexus, between the crime and the property subject to forfeiture at the forfeiture hearing." *Commonwealth v. One 1988 Ford Coupe*, 393 Pa. Superior Ct. 320, 332–333, 574 A.2d 631, 638 (1990), *petition for allowance of appeal denied*, 527 Pa. 631, 592 A.2d 1299 (1991).

To that end, the Commonwealth presented evidence with regard to the highly suspicious circumstances at the house on the day of the seizure, King's statements about his cocaine habit to Trooper Fenstermacher who was a state

**3.** Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101— 780–144 (Controlled Substance Act).

police officer present at the seizure, and King's financial status at the time he purchased the house.

With regard to the state of affairs at the house, Trooper Fenstermacher testified as follows:

Q. Trooper Fenstermacher, based upon the evidence that you brought with you here today which was seized at the property of Coy King and your experience as a narcotics officer, did you formulate an opinion as to the use of the cocaine found on January 7, 1989?

A. Yes I did.

Q. What is that opinion?

A. The opinion is that it was possessed for the intention of resale or delivery.

Q. Why did you come to that conclusion?

A. Due to the fact that we had, number one, found the scales, O'Haus triple beam scales which are the most common set of scales used by persons involved in drug trafficking, found like I said 30 or 40 pieces of plastic bags or plastic bags themselves which had the corners cut off. A person who is using drugs would obviously not [sic] have plastic bags that had the corners cut off because the corners are used to store and package and sell drugs and therefore the residue or what is left of these corners is these plastic bags. The fact there was so many plastic bags found in the bedroom and that's something that's not normal. The large amount of cash which was found inside the residence and the manner in which it was stored and located inside the residence indicates that there was a drug trafficking trend here.[4]

January 22, 1991 hearing transcript (H.T.) at 39–40 (footnote added).

After the Commonwealth rested, King declined to call any witnesses or to rebut the Commonwealth's proof in any way. Pursuant to Section 6802(j)(3) of the Code, 42 Pa.C.S. § 6802(j)(3), once the Commonwealth makes out its *prima*

4. When money is discovered in close proximity to illegal controlled substances, there is a presumption that it is the proceeds from the sale of those substances. *One 1988 Ford Coupe.*

*facie* case that the real property was used or intended to be used to facilitate a violation of the Controlled Substance Act, the burden of proof then shifts to the owner of the property.

 **(j) Owner's burden of proof.**—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be upon the claimant to show:

  . . . .

 (3) *That it was not unlawfully used or possessed by him.* In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa.C.S. § 6802(j)(3) (emphasis added).

Even though the trial court found that the absolute forfeiture of King's house, without an opportunity for redemption, violated equitable principles of law, it concluded that the Commonwealth met its burden of proof. Accordingly, after various motions and continuances, the trial court issued the following order:

 AND NOW, this 2nd day of November, 1990, defendant's [King's] interest in the real estate described in Commonwealth's petition is forfeited pursuant to law. Defendant may redeem his interest within forty-five (45) days of this Order by paying to the Commonwealth of Pennsylvania the sum of Thirty Thousand Dollars ($30,-000.00). This sum is set without prejudice to the right of either party to request, within fifteen (15) days of this Order, an additional hearing to set the amount of money required to redeem defendant's interest.

In its opinion granting the Commonwealth's request for forfeiture, the trial court concluded that King had used his home to violate the law. In so concluding, the trial court

stated that it was highly improbable that King could have accumulated the large sums of money found at the house by legitimate means; that the amount of cash found indicated the existence of a considerable drug trafficking operation; and that it was very unlikely that the paraphernalia found at the house was possessed for personal use.

King failed to appeal the November 2, 1990 order. On November 14, 1990, however, the Commonwealth sought permission to take an interlocutory appeal of the November 2, 1990 order and to have the trial court grant a supersedeas of the same.[5] Specifically, the Commonwealth contended that the November 2, 1990 order "involves a controlling question of law as to which there is a substantial ground for difference of opinion in that the Controlled Substance Forfeiture Act ... does not provide for a right of redemption."[6] The Commonwealth further contended that "[a] supersedeas of the Order dated November 2, 1990, is requested in that if the Commonwealth is forced to accept any payment by the claimant [King] that may effectively preclude petitioner [the Commonwealth] from obtaining the relief requested."[7] Also on November 14, 1990, the Com-

5. Sections 702(b) and (c) of the Code, 42 Pa.C.S. §§ 702(b) and (c), provide as follows:

(b) **Interlocutory appeals by permission.**—When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

(c) **Supersedeas.**—Except as otherwise prescribed by general rules, a petition for permission to appeal under this section shall not stay the proceedings before the lower court or other government unit, unless the lower court or other government unit or the appellate court or a judge thereof shall so order.

6. Paragraph 2 of the Commonwealth's November 14, 1990 Application to Certify as an Interlocutory Appeal and Grant Supersedeas (Application).

7. Paragraph 3 of the Commonwealth's Application.

monwealth requested a hearing in order to set the amount of redemption.

The trial court's only response to the Commonwealth's November 14, 1990 filings was a November 16, 1990 order, wherein the trial court scheduled a hearing date of December 20, 1990 in order "to determine *the request* made by the Commonwealth...."[8] We are not certain whether the trial court was addressing the Commonwealth's request to take an interlocutory appeal of the order, request for a supersedeas, or its request for a hearing on the redemption amount. From all of the surrounding circumstances, however, it appears that the trial court was addressing the latter request.

At the January 22, 1991 hearing,[9] counsel for the Commonwealth stated that she was present in order to pursue the Commonwealth's motion for a hearing on the redemption amount; she never mentioned the November 14, 1990 application seeking permission to take an interlocutory appeal. Counsel for King, however, asked the trial court what would happen if the Commonwealth appealed. The trial court replied that "[e]verything will be stayed on appeal including your [King's] 45 days." H.T. at 18.

Also at the hearing, the Commonwealth's witness, a real estate broker, testified that the fair market value of the house was forty-nine thousand dollars ($49,000.00). The trial court emphasized that "[a]ll I am interested in today is how much money, how much drug money went into this house?" H.T. at 11–12. The trial court unambiguously indicated that the redemption price, in its opinion, should be in equitable proportion to that amount.

In the subsequent January 22, 1991 order, the trial court confirmed the redemption price of $30,000.00 and again provided King forty-five days in which to pay that amount or have the entire property forfeited. The Commonwealth

8. Trial Court's November 16, 1990 order (emphasis added).

9. At the Commonwealth's request, the December 20, 1990 hearing was continued to January 22, 1991.

filed a notice of appeal of the trial court's January 22, 1991 order with our court on February 6, 1991.[10]

There are two issues before us. The first issue is whether the trial court's November 2, 1990 order was final and appealable, thereby making the Commonwealth's February 6, 1991 appeal untimely. The second issue is whether the trial court erred in permitting Appellee the opportunity to redeem his forfeited house for $30,000.00.

■ With regard to the first issue, King, in his brief, requests this Court to quash the Commonwealth's appeal or, in the alternative, to limit review to the issue of the amount of redemption on the ground that the trial court's January 22, 1991 order was limited to the amount of redemption and no timely appeal was taken from the November 2, 1990 order. As noted above, these alternative requests were set forth in King's brief; King did not file a formal motion to quash or to limit review with this Court. However, since the timeliness of appeals goes to our subject matter jurisdiction, we may raise timeliness *sua sponte.* We will therefore consider King's request to quash. *Donatucci v. Pennsylvania Labor Relations Board,* 119 Pa.Commonwealth Ct. 542, 547 A.2d 857 (1988).

■ An interlocutory order is final and appealable when "(a) the order is separable and collateral to the main cause of action; (b) the right involved is too important to be denied review; *and* (c) the issue is such that, if the resolution would be postponed until final judgment, it would be lost." *Gwiszcz v. City of Philadelphia,* 121 Pa.Commonwealth Ct. 376, 379, 550 A.2d 880, 881 (1988) (emphasis added).

10. There is a discrepancy as to which trial court order the Commonwealth is appealing, the January 22, 1991 order or the November 2, 1990 order. In its notice of appeal, the Commonwealth states that it is appealing the January 22, 1991 trial court order; whereas, in its brief at page two, it states that it is appealing the November 2, 1990 trial court order. It would appear from the circumstances that the Commonwealth is actually appealing both orders, the November 2, 1990 order being interlocutory in nature, as will be discussed *seriatim,* and the January 22, 1991 order being clearly final and appealable.

■ With regard to the November 2, 1990 order, clearly element (c) of the *Gwiszcz* test has not been satisfied. Moreover, it appears that both the trial court and the parties treated it as an interlocutory order. Significantly, the trial court never responded to the Commonwealth's request to take an interlocutory appeal of the November 2, 1990 order. For these reasons, the Commonwealth, in our opinion, was not required to appeal the trial court's action granting redemption until the trial court finally resolved all of the issues before it by entering the January 22, 1991 order.[11] Accordingly, we find that King's motion to quash is without merit and the trial court's action granting him a right of redemption is properly before us.

■ Having addressed the procedural issue, we now turn to the merits. The Commonwealth's first argument is that the trial court erred in exercising its equitable powers by affording King the opportunity to redeem his forfeited property.[12] We agree.

In Section 6801(a)(6)(i)(C) of the Code,[13] the legislature unambiguously states that "[r]eal property used or intended

**11.** With regard to appealability, we previously noted that:
   [a]ppellate courts ought not to be called upon to decide a case until every issue involved has been finally resolved in the proceedings before the trial court or administrative agency. Only then will our decision put to rest the opposing claims of the litigants.
   *FMC Corporation v. Workmen's Compensation Appeal Board (Wadatz),* 116 Pa.Commonwealth Ct. 527, 530, 542 A.2d 616, 617 (1988).

**12.** In its opinion, the trial court advocated the use of equitable principles in forfeiture cases, just as courts have implemented them in debt cases. Section 1504 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1504, however, provides the following:
   *In all cases where* a remedy is provided or a duty is enjoined or anything is directed to be done by statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, *or anything done agreeably to the common law,* in such cases, further than shall be necessary for carrying such statute into effect.
   1 Pa.C.S. § 1504 (emphasis added). Thus, we decline to affirm the trial court's equitable action on the basis of any analogy to debt cases, which are, in any event, not sufficiently analogous to the case now before us, falling, as it does, under a statute having a substantially different purpose than that propelling debtor law and the evolution thereof.

**13.** 42 Pa.C.S. § 6801(a)(6)(i)(C).

to be used to facilitate a violation of The Controlled Substance, Drug, Device and Cosmetic Act," as here, shall be subject to forfeiture. Nothing therein, however, either exempts personal residences from forfeiture or provides for the redemption thereof after forfeiture.

■ Courts, of course, have no authority to engraft additional language upon a statute when that statute, as the one here, is clear and unambiguous. *Black v. Billy Penn Corp.*, 72 Pa.Commonwealth Ct. 628, 632, 457 A.2d 192, 193 (1983). Clearly, the legislature knows how to provide for a right of redemption in a statute, but chose not to do so in the one before us. "Should change in [these forfeiture provisions] be considered wise, ... that change must come from the legislature and not from this Court." *Id.*, 72 Pa.Commonwealth Ct. at 632, 457 A.2d at 193.

Moreover, as Justice Roberts stated in the case of *First Federal Savings and Loan Association of Lancaster v. Swift*, 457 Pa. 206, 321 A.2d 895 (1974):

'[w]henever there is a direct rule of law governing the case in all its circumstances, the [equity] court is as much bound by it as would be a court of law....' ... Where, as here, the parties' rights are ... fixed by a comprehensive scheme of legislation, the maxim 'equity follows the law' is entitled to the greatest deference....

*Id.*, 457 Pa. at 212, 321 A.2d at 898 (citations omitted).

■ We have, in the forfeiture provisions before us, such a comprehensive scheme of legislation fixing the rights and remedies of the parties. A trial court's exercise of equitable powers is simply improper where the legislature has provided a mandatory and exclusive statutory remedy, as it has here.[14] Section 1504 of the Statutory Construction Act

14. As we noted previously, under Section 6802(j) of the Code, 42 Pa.C.S. § 6802(j), the property owner may present evidence at the forfeiture hearing to the effect that the property was not unlawfully used or possessed, or, even if it was, that the owner was either ignorant of such unlawful use or possession or never consented to the same. *See also* Section 6801(e)(2) of the Code, 42 Pa.C.S. § 6801(e)(2), which pertains to the sale of forfeited property and

of 1972 (S.C.A.), 1 Pa.C.S. § 1504; *see also Aquarian Church of Universal Service v. York County,* 90 Pa.Commonwealth Ct. 290, 494 A.2d 891 (1985). Here, King failed to pursue the remedies specifically provided to him by the forfeiture provisions of the Code and the trial court erred in fashioning an equitable remedy specifically omitted by the legislature.

King, however, claims that forfeiture without redemption in his situation results in a violation of his Eighth Amendment right against cruel and unusual punishment.[15] This same argument was advanced and rejected in the case of *One 1986 Ford Mustang.* Therein, it was argued that forfeiture of an automobile pursuant to the provisions of Sections 6801–6802 of the Code was an excessive penalty disproportionate to the underlying offense, and, as such, constituted cruel and unusual punishment because the value of the automobile exceeded the maximum fine which could be imposed as well as the value of the contraband which was stipulated to be $50.00.

■ In response, the Pennsylvania Superior Court noted that it had "been unable to discover any Pennsylvania case where the forfeiture statute was held to constitute an excessive penalty amounting to cruel and unusual punishment because the value of the forfeited property exceeded the value of the contraband." *Id.* 397 Pa.Superior Ct. at 119–120, 579 A.2d at 960. The Superior Court further noted that Section 6801(a)(4),[16] like Section 6801(a)(6) here, pro-

which would appear not to preclude King from purchasing his forfeited property, if sold. Redemption, however, is clearly not a remedy.

15. "[A]n act of assembly will not be deemed unconstitutional unless it clearly, palpably, and plainly violates the constitution." *Commonwealth v. One 1986 Ford Mustang,* 397 Pa. Superior Ct. 116, 118, 579 A.2d 958, 959 (1990). "[F]orfeiture statutes in general are constitutionally sound and are not violative of due process rights simply because they involve the seizure of property." *Penn Video Operators v. United States,* 731 F.Supp. 717, 719 (W.D.Pa.1990), *aff'd without opinion,* 919 F.2d 136 (3d Cir.1990). Any doubts as to the constitutionality of such statutes are to be resolved in favor of sustaining them. *One 1986 Ford Mustang.*

16. Section 6801(a)(4) reads in pertinent part as follows:

vides for forfeiture without regard to amount.[17] Based thereon, the Superior Court upheld the forfeiture of the automobile.

We find *One 1986 Ford Mustang* to be analogous to the situation here. Thus, we conclude that the *de minimis* nature of a violation does not warrant a redemption opportunity in a forfeiture situation. As long as the statutory requirements are met,[18] forfeiture of real or personal property in its entirety, without a redemption opportunity, is proper. *See also Commonwealth v. One 1983 Toyota Corolla*, 134 Pa.Commonwealth Ct. 325, 329, 578 A.2d 90, 92 (1990), wherein we stated that "inasmuch as the legisla-

**(a) Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

. . . .

(4) All conveyances, including aircraft, vehicles or vessels, which are used or are intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of, property described in paragraph (1) [drug-related paraphernalia and drugs] . . .

42 Pa.C.S. § 6801(a)(4).

17. We note that the words "without regard to amount" are not included in Section 6801(a)(4) of the Code. Thus, the court interpreted that section to mean that forfeiture of the entire conveyance was proper, as long as it was "used or . . . intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of, property described in paragraph (1) [drug-related paraphernalia and drugs]." Section 6801(a)(4) of the Code, 42 Pa.C.S. § 6801(a)(4).

18. King contends (1) that the Commonwealth failed to sustain its burden of proof because it did not demonstrate that his home was purchased with monies derived from illegal narcotics trafficking and (2) that two controlled purchases of cocaine made from him at his home do not prove that his home was used to facilitate illegal drug trafficking. King, however, did not appeal the trial court's decision finding that the Commonwealth sustained its burden of proof and, therefore, did not preserve this issue for appellate review.

In any event, the Commonwealth's only obligation was to establish, by a preponderance of the evidence, that King's house had been used to facilitate a violation of the Controlled Substance Act. The two controlled purchases of cocaine, noted above, can establish that King's home was so used. *One 1988 Ford Coupe* (one sale in home sufficient to establish that home used to facilitate sales of cocaine, thus warranting forfeiture thereof).

ture does not require the Commonwealth to prove possession of any minimum amount of cocaine to sustain a prosecution, this court finds that the *de minimis* statute has no application to a forfeiture proceeding involving possession of any amount of cocaine, no matter how small." (Emphasis added.)

The trial court, however, would make a distinction between a house and a car under our fact pattern: "[t]his writer is very concerned about forfeiture of homes. Perhaps it is only a matter of personal values, but automobiles and the like seem entirely different than the roof and walls, that little space in the universe a person calls home."[19] Although we respect the trial court's position with regard to a person's "home," we find no support in the law for treating personal residences and automobiles differently for purposes of forfeiture pursuant to the Controlled Substance Act.

Significantly, in forfeiture cases involving houses,[20] courts have failed to make a distinction between cars and houses by applying proportionality principles to cases involving the latter. As long as the statutory requirements for forfeiture were met, courts upheld the forfeiture of entire tracts, regardless of whether or not only part of the real estate was used for the unlawful activity.[21]

19. *Commonwealth of Pennsylvania v. All that Certain Tract of Land Situate in the Borough of Gettysburg, County of Adams, and State of Pennsylvania known as 129 West Street, Gettysburg, Adams County as Described with Particularity in Deed Book 504, Pages 251–252, Recorder of Deeds Office, Adams County, Pennsylvania, Along with All of Its Improvements, Appurtenances, Buildings and Structures* (No. CC–105–89, filed January 22, 1991), slip op. at 4.

20. *E.g., U.S. v. One 107.9 Parcel of Land in Warren Township*, 898 F.2d 396 (3d Cir.1990); *U.S. v. Premises Known as 427 Chestnut Street, Reading, Pa.*, 731 F.Supp. 183 (E.D.Pa.1990); and *U.S. v. Reynolds*, 856 F.2d 675 (4th Cir.1988).

21. *See, e.g., Reynolds* (court held that, even though only a part of the tract and appurtenances were used for drug deals, forfeiture of the entire tract was proper); *427 Chestnut Street* (court held that due to the discovery of drug-related paraphernalia at the two tracts at issue and evidence that the properties were purchased with the proceeds of drug sales, forfeiture of both tracts in their entirety was proper.)

In *One 107.9 Parcel of Land,* the third circuit interpreted the real estate forfeiture provision in Section 511(a)(7) of the Comprehensive Drug Abuse Prevention and Control Act of 1970. Section 511(a)(7), which is very similar to Section 6801(a)(6)(i)(C) of the Code,[22] reads as follows:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

(7) All real property, including any right, title, and interest in the whole or any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter. . . .

21 U.S.C. § 881(a)(7).

In response to the property owners' argument that "since much of the land was not really connected with the illegal activity, a fact finder should have been permitted to decide what amount of the land was forfeited for illegal use,"[23] the *One 107.9 Parcel* court made the following statements:

We think the language of the statute means what it says. When it is invoked by the government it embraces all of a unitary tract although only part is used in violation of § 881(a)(7).

*Id.* at 400.

While not binding on us in this case, we find the third circuit's reasoning in *One 107.9 Parcel* persuasive and sound. In applying it to the case before us, we conclude that the trial court's unsupported imposition of proportionality by way of redemption, due to King's alleged *de minimis* violation, was improper.

---

**22.** In *Commonwealth v. One 1988 Suzuki Samurai,* 139 Pa.Commonwealth Ct. 68, 589 A.2d 770 (1991), we noted that the federal Act served as the pattern for the forfeiture provisions contained in our Code.

**23.** *One 107.9 Parcel* at 400.

Finally, King contends that the Commonwealth should be estopped from forfeiting his house due to his plea agreement. We disagree. That agreement did not include, nor did it preclude, the statutorily mandated forfeiture.

For the foregoing reasons, we affirm the forfeiture and reverse that part of the trial court's order granting King a right of redemption.

## ORDER

AND NOW, this 22nd day of January, 1992, the order of the Court of Common Pleas of Adams County in the above-captioned matter is hereby affirmed with regard to the forfeiture, but reversed with regard to a right of redemption.