595 A.2d 101

COMMONWEALTH of Pennsylvania, Appellant,

v.

Martha Jane GIFFIN, Appellee.

Superior Court of Pennsylvania.

Submitted May 6, 1991.

Filed July 18, 1991.

16

18

Russel B. Korner, Jr., Asst. Dist. Atty., Uniontown, for Com., appellant.

William E. Duffield, Uniontown, for appellee.

Before CIRILLO, OLSZEWSKI and CERCONE, JJ.

CERCONE, Judge:

This is an appeal by the Commonwealth from an order returning the sum of one thousand two hundred sixty-six dollars ($1,266.00) in United States currency to appellee, Martha Jane Giffin, pursuant to the Controlled Substances Forfeiture Law, 42 Pa.C.S.A. §§ 6801–6802. For the reasons set forth below, we affirm the order entered by the lower court.

The record shows that in October of 1988, appellee was arrested and charged with possession of a controlled substance (marijuana)[1] and delivery or possession with intent to deliver a controlled substance (marijuana).[2] In exchange for a *nolle prosequi* on the charge of delivery or intent to deliver, appellee pled guilty to simple possession. N.T. 1/10/90. In February of 1990, she was sentenced to serve a one (1) year term of probation. Subsequently, a hearing was held to determine whether the cash sum of $1,266.00 seized by the police at the time of appellee's arrest should be forfeited to the Commonwealth under the Controlled Substance Forfeiture Law ("the Forfeiture Law"), *supra.* After a full hearing before the Honorable Gerald R. Solomon, an order was entered returning the money to appellee.

The instant appeal was timely filed by the Commonwealth and raises three issues for our consideration: (1) whether the Commonwealth presented sufficient evidence that the seized currency was used or intended to be used to facilitate a violation of the Controlled Substance, Drug, Device and Cosmetic Act ("the Controlled Substance Act"), 35 P.S. §§ 780–101 *et seq.;* (2) whether the trial judge committed reversible error by failing to consider certain factors presented by appellant during the forfeiture hearing; and (3) whether the trial judge erred by refusing to permit an expert to render an opinion as to whether drugs were being sold from appellee's residence. We shall review these claims *seriatim.* Initially, however, we address our jurisdiction to entertain this appeal.

The question of an appellate court's jurisdiction to consider any particular case may properly be raised *sua sponte. Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985). The Judicial Code states that the Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas resulting from all civil actions or proceedings by the Commonwealth government, including those instituted by any officer thereof acting in his

1. 35 Pa.C.S.A. § 780–113(a)(16).
2. *Id.* § 780–113(a)(30).

official capacity. 42 Pa.C.S.A. § 762(a)(1)(ii). The Commonwealth Court has construed this provision as providing for the exclusive jurisdiction of the Commonwealth Court in forfeiture proceedings. *See Commonwealth v. McDermond,* 127 Pa.Commw. 17, 20–22, 560 A.2d 901, 903 (1989) (discussing Commonwealth Court's jurisdiction to consider the forfeiture of gambling proceeds pursuant to the Liquor Code, 47 P.S. § 6–602(a)). However, this court has recently held that the Superior Court has jurisdiction to entertain forfeiture proceedings under both the prior forfeiture law [3] and the current statute [4] because these types of actions are drug-related and quasi-criminal in nature. *Commonwealth v. $126,730.50,* 399 Pa.Super. 118, 121–23, 581 A.2d 953, 955–56 (1990).

In the interests of judicial economy, a recent panel of this court declined to transfer an appeal to Commonwealth Court where neither party timely objected to the jurisdiction of the Superior Court. *See In re: Laying Out and Opening a Private Road,* 405 Pa.Super. 298, 592 A.2d 343 (1991) (even where Commonwealth Court has claimed exclusive jurisdiction over subject matter of appeal, Superior Court can retain case in interests of judicial economy). Neither party to the instant appeal has questioned the exercise of appellate jurisdiction by the Superior Court. Therefore, any challenge on this ground is deemed waived. *See* Pa.R.A.P., Rule 741(a), 42 Pa.C.S.A. (providing for the perfection of jurisdiction in an appellate court in which appeal was filed upon the appellee's failure to timely object); *General Municipal Authority v. Yuhas,* 392 Pa.Super. 397, 401, 572 A.2d 1291, 1293 (1990) (it is within a panel's discretion to decline transferring a case even where Commonwealth Court has exclusive appellate jurisdiction over matters raised on appeal if neither party objects to the exercise of appellate jurisdiction by Superior Court). *But cf. Commonwealth v. 502–504 Gordon St.,* 405 Pa.Super. 465, 592 A.2d 756 (1991) (Superior Court would not retain

---

3. 35 P.S. §§ 780–128 and 780–129 (repealed).

4. 42 Pa.C.S.A. §§ 6801–6802.

jurisdiction over appeal from an order of forfeiture effectuated pursuant to 42 Pa.C.S.A. §§ 6801–6802 as subject matter jurisdiction is vested in the Commonwealth Court). We shall accordingly retain jurisdiction and address the merits of the appeal.

■ Appellant first argues that the evidence adduced at the hearing below was sufficient to show that the currency seized upon appellee's arrest was used, or was intended to be used, to facilitate a violation of the Controlled Substance Act. In this context, the Commonwealth contends that the currency is subject to forfeiture because it may be deemed to be proceeds from the illegal sale of marijuana. It is well established that there need be no underlying conviction of a crime to support a forfeiture. *Commonwealth v. One 1988 Ford Coupe,* 393 Pa.Super. 320, 324 n. 2, 574 A.2d 631, 633 n. 2 (1990); *Petition of Maglisco,* 341 Pa.Super. 525, 491 A.2d 1381 (1985); *Commonwealth v. 1978 Toyota,* 321 Pa.Super. 549, 468 A.2d 1125 (1983). In order to show that currency should properly be forfeited to the state, the Commonwealth need only prove, by a preponderance of the evidence, that the currency in question was used to facilitate a drug transaction. *Commonwealth v. One 1988 Ford Coupe,* 393 Pa.Super. at 327 and 332–33, 574 A.2d at 635 and 638. *See* 42 Pa.C.S.A. § 6801(a)(6)(i)(A) and (B) (listing property subject to seizure).

■ Where currency is found in close proximity to controlled substances which are unlawfully possessed, such currency is rebuttably presumed to be proceeds deriving from selling a controlled substance in violation of the Controlled Substance Act. 42 Pa.C.S.A. § 6801(a)(6)(ii). In *Commonwealth v. Tate,* a case decided under the prior forfeiture statute, a panel of this court stated that a rebuttable presumption is a means by which a rule of substantive law is invoked to force the trier of fact to reach a given conclusion, once the facts constituting its hypothesis have been established. *Id.,* 371 Pa.Super. 611, 616–17, 538 A.2d 903, 906 (1988), *quoting Commonwealth v. Shaffer,* 447 Pa. 91, 104–06, 288 A.2d 727, 735 (1972), *cert. denied,* 409 U.S.

867, 93 S.Ct. 164, 34 L.Ed.2d 116 (1972). The *Tate* court further explained that "[a] rebuttable presumption forces the defendant to come forth or suffer inevitable defeat on the issue in controversy." *Id.* The specific test used to evaluate the evidence presented at a forfeiture hearing is whether it was "more likely than not" that the funds were used or intended to be used to facilitate a violation of the Controlled Substance Act. *Commonwealth v. One 1988 Ford Coupe*, 393 Pa.Super. at 333, 574 A.2d at 638.

■ As applied to the instant case, Trooper Daniel J. Venick testified for the Commonwealth that the police seized from appellee one bag of marijuana, three bags of "vegetable matter with seeds," two containers of "roaches,"[5] United States currency totalling $1,266.00, and drug paraphernalia consisting of a glass bong pipe (found under appellee's couch), a quantity of empty plastic bags stored in the vicinity of the marijuana, and cigarette papers. N.T. 11/16/90 at 26–28. Trooper Venick, who was qualified as an expert, further testified that the small bags of "vegetable matter" were, in his opinion, marijuana packaged for sale. *Id.* at 30. Trooper Earl Roberts, present at appellee's arrest, stated that he saw her attempting to hide a roll containing the sum of $850.00 in her couch, near the glass bong. *Id.* at 37–38. Trooper Roberts testified that he found the additional sum of $411.00 in a jacket lying on appellee's coffee table. *Id.* at 39.

The Commonwealth also produced evidence pertaining to the results of a "nasal lineup" conducted by Corporal Leonard Maharowski, a canine narcotics investigator. Corporal Maharowski explained that in a "nasal lineup," envelopes of similar bulk, weight and appearance are presented to a dog trained to "sniff test" for marijuana. *Id.* at 42–43. Under the direction of Corporal Maharowski, Trooper Roberts prepared four envelopes, one of which contained the cash seized from appellee. *Id.* at 43. These envelopes were then presented to "Decoy," Corporal Maharowski's trained dog.

5. According to the witness, the slang term "roach" indicates the end of a marijuana cigarette. N.T. 11/16/90 at 28.

*Id.* Decoy reacted very aggressively to the package containing appellee's money by ripping and tearing the envelope open. *Id.* Corporal Maharowski testified that this behavior, called "alerting," was consistent with the presence of marijuana on appellee's money. *Id.*

In view of the fact that the currency was found in the same room with appellee's drug paraphernalia and in close proximity to the controlled substances packaged for sale and stored in appellee's kitchen, the money is presumed to be derived from the sale of the controlled substances. 42 Pa.C.S.A.§ 6801(a)(6)(i)(A). It thus becomes a question of whether appellee introduced sufficient evidence to rebut this presumption. *See also Commonwealth v. $803 Cash,* 403 Pa.Super. 526, 589 A.2d 735 (1991) (drug residue found on seized money was sufficient to support an inference that the funds had been part of an illegal drug transaction and were therefore subject to forfeiture).

At the hearing, appellee testified that two days before her arrest, she had cashed a Welfare check in the amount of $411.00. N.T. 11/16/90 at 5–6. She also stated that her paramour's brother had given her $1,000.00 in cash so that she could give the money to her paramour, who was out of town at the time. *Id.* at 5–9. In contradiction to Officer Roberts' testimony, *supra,* appellee averred that she kept the rolls of cash on her person in two separate pockets in her pants. *Id.* at 5. Appellee candidly admitted that she possessed marijuana for her personal use. *Id.* at 8. In response to a question by defense counsel, Trooper Maharowski conceded that a dog trained to detect the presence of drugs could react to money handled by a person who used marijuana merely for personal enjoyment. *Id.* at 42.

Mr. Neil Patrick, the brother of appellee's paramour William Patrick, testified that he had received $27,000.00 as the settlement of a Social Security disability claim. *Id.* at 18. Because his brother helped by driving him to his Social Security hearings, Neil Patrick promised to give $1,000.00 to William. *Id.* Neil Patrick stated that he gave the

money, in cash, to appellee so that she could in turn hand it to her paramour who was working in Virginia at that time. *Id.* at 18–19. Mr. William Patrick corroborated the existence of the agreement between himself and his brother, and stated that he had intended to use the $1,000 to purchase a car for appellee. *Id.* at 20–22. From these facts, the lower court held that the Commonwealth failed to show that the funds were subject to forfeiture.

To rebut appellee's assertion that the $1,266.00 was legitimately in her possession, the Commonwealth argues that appellee's own testimony established that her sole source of income at the time of the hearing derived from bi-weekly Welfare checks in the amount of $411.00. *Id.* at 6–10. The Commonwealth demonstrated that from her monthly total of $822.00 in welfare funds, appellee was required to pay rent in the amount of $200.00 and feed a family of eight. *Id.* at 9–10. Based upon these facts, appellant urges us to find that the lower court erred in ruling that the Commonwealth failed to sustain its burden of proof that it was "more likely than not" that the particular funds seized were derived from the sale of contraband and were used to further a violation of the Controlled Substance Act. This we cannot do.

Although the $1,266.00 was arguably found in close proximity to controlled substances which were unlawfully possessed, this fact alone merely raises a rebuttable presumption that they were proceeds deriving from the sale of the controlled substance. Appellee presented evidence, which the lower court found credible, that the specific funds seized were derived from legitimate sources, *i.e.*, appellee's welfare check and a disability settlement. This evidence was sufficient to rebut the presumption raised by the discovery of the money in close proximity to the illegal controlled substance. We are cognizant of the fact that the Commonwealth also presented evidence that appellee possessed marijuana packaged for sale. However, the Commonwealth's expert witness admitted that the particular packages of marijuana found at appellee's residence were

as consistent with a purchase made for personal use as for intended resale. N.T. 11/16/90 at 34. Thus the lower court correctly ruled that these facts fail to sufficiently establish a nexus between the *specific* funds in question and any violation of the Controlled Substance Act by appellee.

Nor are we convinced by appellant's somewhat convoluted argument regarding appellee's acknowledged public assistance income. The Commonwealth concedes that appellee had legitimately obtained $411.00 in cash from her relief check shortly before her arrest. Although appellant patently disbelieves the testimony of the Patrick brothers regarding the alleged $1,000.00 payment to appellee on behalf of her paramour, the assessment of credibility is properly left to the fact finder. *Commonwealth v. Nelson,* 399 Pa.Super. 618, 623–25, 582 A.2d 1115, 1118 (1990). *See also Commonwealth v. Wallace,* 522 Pa. 297, 315, 561 A.2d 719, 728 (1989) (under ordinary circumstances, an appellate tribunal should not entertain a challenge to the weight of the evidence since their examination is confined to the "cold record"). Appellee presented evidence, which the lower court found reliable, that within two days of her arrest, she had licitly received the sum of $1,411.00.[6] As appellee adduced testimony that the response of the drug sniffing dog when presented with the seized funds could have been a reaction to the money's prior handling by a marijuana user, *i.e.,* appellee, we agree with the lower court that the Commonwealth has failed to show that the funds were more likely than not derived from or used to facilitate a violation of the Controlled Substance Act. Finding no basis on which to grant the relief appellant seeks, we affirm the ruling of the trial court on this issue.

Next, appellant urges us to vacate the order in question because, in determining whether the seized money should be returned to appellee, the lower court did not apply

---

**6.** Appellee explained the discrepancy between the sum seized and the $1,411.00 total she had received by stating that she had paid $100.00 on her rent and had also purchased some household supplies. N.T. 11/16/90 at 7–8.

a test set forth by the Federal District Court for the Northern District of Georgia in *U.S. v. $319,820.00*, 620 F.Supp. 1474 (N.D.Ga.1985). The simple answer to appellant's challenge is that the lower court was not required to employ federal law from a foreign jurisdiction in order to interpret Pennsylvania law. In the absence of a ruling on a particular question by the United States Supreme Court, the decision of a federal intermediate appellate panel, much less that of a federal district court, is not binding on Pennsylvania courts. *Cianfrani v. Johns–Manville Corp.*, 334 Pa.Super. 1, 6, 482 A.2d 1049, 1051 (1984). Pennsylvania courts are not bound by the decisions of inferior federal courts where the case specifically concerns Pennsylvania law. *See, e.g., Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A.2d 199 (1962); *Commonwealth v. Lacey*, 344 Pa.Super. 576, 496 A.2d 1256 (1985). While decisions of the lower federal courts have a persuasive authority, they are not binding on Pennsylvania courts even where they concern federal questions. *Hangelias v. Dawson*, 158 Pa.Super. 370, 374, 45 A.2d 392, 394 (1946). As discussed *supra*, in the instant case, the Pennsylvania trial court properly applied Pennsylvania law.[7]

7. In connection with its second argument, the Commonwealth urges us to interpret certain "collateral" factors present in the instant case as evidence that appellee was engaged in drug trafficking. The first such factor is appellee's failure to present proof of employment, from which the Commonwealth implies that she had no legitimate source of income. However, as the Commonwealth has not contested appellee's evidence that she received public assistance, we cannot infer that she had no legal source of income. The fact that appellee lived on a restricted budget at the time in question does not logically and necessarily lead to the conclusion that the funds in her possession at the time of the seizure must have been the fruit of illegal endeavor.

The second collateral factor cited, appellee's alleged "nervousness" when the police entered her home, is not enough, viewed in the context of all the circumstances of the case, to support the inference that appellee was a drug dealer. Appellee's nervous reaction to the presence of the police officers may as reasonably be explained as a consciousness of guilt for simply possessing a controlled substance, marijuana, which appellee readily produced upon the troopers' request.

■ Finally, appellant argues that it was error for the lower court judge to refuse to permit an expert witness to render an opinion as to whether drug sales were being made from appellee's home. The Commonwealth has correctly stated that counsel for appellee stipulated to the fact that the witness, Trooper Venick, was an expert in the field of narcotics. N.T. 11/16/90 at 28. In general, an expert witness may express an opinion on matters which are within his or her scientific training and experience. *Commonwealth v. Gross*, 307 Pa.Super. 353, 357, 453 A.2d 620, 622 (1982). Such testimony is admissible where it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience. *Commonwealth v. Cepull*, 390 Pa.Super. 167, 169–70, 568 A.2d 247, 248 (1990), *allocatur denied*, 525 Pa. 624, 578 A.2d 411 (1990). However, the admissibility of expert testimony is within the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *Commonwealth v. Emge*, 381 Pa.Super. 139, 141, 553 A.2d 74, 74 (1988).

> Nor do we find the fact that appellee refused to disclose the source of her personal "stash" dispositive of whether she was a drug dealer. N.T. 11/16/90 at 15. When the Commonwealth attorney asked who gave the marijuana to appellee, she replied that she would not say the name because she "didn't want to get them in trouble." *Id.* Appellee specifically stated that she only received an ounce of marijuana from this source. *Id.* Further, and contrary to the Commonwealth's implication, the words "enough to sell to support a living" were not uttered by appellee but rather by the Commonwealth attorney. *Id.* We are cognizant of the following testimony cited by the Commonwealth in which Trooper Venick described statements allegedly made by appellee at the time of the search and seizure:
>> She wouldn't tell me from where or from whom she received the marijuana, but she did say that it was for her own personal use. Then she went on to tell me that there were two additional bags that I found in the kitchen belonged to the one that she turned over to me, that she had, cut was the word she used, cut those for two friends of hers. [Sic] She wouldn't identify these two friends but she did tell me she would get ten dollars apiece for the bags.
>
> *Id.* at 27. Appellee herself vehemently denied dealing drugs for profit. *Id.* at 14. As we have already stated, it is for the trier of fact to evaluate the credibility of conflicting evidence. *See Commonwealth v. Nelson, supra.*

In the instant case the record shows that Trooper Venick testified extensively about the conditions he observed at appellee's residence as well as with regard to his conversation with appellee at the time the search took place. N.T. 11/16/90 at 24–36. The witness' testimony included a description of the drug paraphernalia found in appellee's possession and its purpose, the quantity and location of the drugs seized, and a discussion of the type of packaging used on the marijuana. *Id.* However, the testimony was interrupted after the following exchange:

Q. (By counsel for the Commonwealth): And the plastic bag that you discovered with one ounce of vegetable matter in it, what is a plastic bag used for?

A. To keep the marijuana together so it can be transported.

Q. And typically how is marijuana transported, Trooper?

A. In individual bags of that nature.

Q. When you say bags, are they plastic, clear bags?

A. They are clear plastic bags that you can see what is inside of them, very similar to a sandwich bag.

Q. And do you know the weight of that marijuana in those bags?

A. All total, it was in excess of 30 grams.

Q. Which is about what, one ounce of marijuana?

A. Yes.

Q. And I noticed also, that there were three rolled plastic bags containing vegetable matter. Why would somebody have three rolled plastic bags, Trooper?

A. I would say that would be, it was different. It was smaller bags, like it was going to be sold or distributed.

Q. Trooper, do you have an opinion as to whether or not drugs were being sold from [appellee's residence]?

*Id.* at 29–30. At this point defense counsel objected. In response, the hearing judge ruled:

(By the Court): He has testified what, in his opinion, the drug paraphernalia was and he has testified that the three rolled bags are normally sold. You have now asked him his opinion as to whether or not drugs were sold from this residence. We are going to sustain that objection.

*Id.* at 30–31. Following this ruling, the witness additionally stated that appellee kept "a half a dozen or so" empty plastic storage bags ("baggies") in a kitchen cupboard with her household supplies. *Id.* at 35. In light of the comprehensive testimony which the witness was permitted to give, we are unable to conclude that the lower court committed a clear abuse of discretion merely by preventing Trooper Venick from uttering the culminating statement that he believed drugs were being sold from appellee's residence.

Order affirmed.

Olszewski, J., files a concurring and dissenting opinion.

OLSZEWSKI, Judge, concurring and dissenting:

While I agree with Judge Cercone's well-reasoned conclusion that this Court may exercise jurisdiction over the instant matter, I believe that the Commonwealth has satisfied its burden of proving, by a preponderance of the evidence, that the currency was used to facilitate a drug transaction. The majority is correct in finding that due to the fact that the currency was found in close proximity to the marijuana, a rebuttable presumption exists that such currency is the product of the sale of the controlled substance. Unlike the majority, however, I would not find that appellee herein has introduced sufficient evidence to rebut this presumption and would hold that the funds are subject to forfeiture.

Trooper Daniel Venick testified that the other state troopers seized various prepared bags of marijuana and other drug paraphernalia from the home of appellee.[1] Incident to that seizure was the discovery, in separate bundles, of

---

1. Additionally, Trooper Venick was of the opinion that the marijuana bags were packaged for sale.

$850.00 and $411.00. Trooper Earl Roberts, present at the scene, testified that he observed appellee attempt to hide the bundle containing $850.00 in the couch. Trooper Maharowski testified that a nasal lineup, consisting of four envelopes, one of which contained the seized money, was conducted at the police station. A police dog, trained in the detection of narcotics, examined the envelopes and reacted to the envelope containing the money. Trooper Maharowski testified that the dog's reaction indicated the presence of narcotic odor on the money in that envelope.

Appellee attempted to rebut the presumption that the funds seized were proceeds from the sale of the marijuana, by alleging that she received the sum of $1,000.00 from her paramour's brother, with which she planned to buy an automobile.[2] She also testified that the $411.00 found was from a welfare check that she cashed two days before the arrest.

I do not believe that the proffered attempt made by appellee to advance other sources from which she received the two bundles of money seized sufficiently rebuts the presumption that it is proceeds from the sale of a controlled substance. The result reached by the majority would set a poor precedent for overcoming this presumption, as one would need to merely articulate an alternative source of the money seized in order to successfully rebut the presumption. The Commonwealth's presentation of more than sufficient evidence that the funds seized were derived from the sale of contraband should not be so easily discounted.

---

2. The discrepancy between the $850 seized during the search and the $1,000 that appellee testified she received from another source was explained by appellee at trial. She testified that she used the difference of the money for rent and household supplies. Appellee's paramour and his brother both corroborated the fact that appellee received the $1,000 from the latter.