**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Wayne McKIBBEN, Appellee.**

Superior Court of Pennsylvania.

Argued June 10, 2009.

Filed July 14, 2009.

Andrea Johnson, Asst. Dist. Atty, Philadelphia, for the Com., appellant.

Eugene P. Tinari, Philadelphia, for appellee. (Submitted)

BEFORE: STEVENS, KLEIN, and KELLY, JJ.

**OPINION BY STEVENS, J.:**

¶ 1 The Commonwealth appeals from the Judgment of Sentence [1] entered on February 21, 2008, in the Court of Common Pleas of Philadelphia County at which time the trial court sentenced Wayne McKibben (hereinafter "Appellee") to an aggregate prison term of three (3) years to six (6) years in prison, a $15,000 fine, and $1,625 in court costs. Following our review of the record, we reverse.

¶ 2 On April 30, 2007, Appellee was arrested and charged with various drugs and weapons offenses. On January 7, 2008, he waived his right to a jury trial, and following a one day bench trial the trial court convicted Appellee of possession with intent to deliver a controlled substance,[2] criminal use of a communication facility,[3] possession of a controlled substance,[4] possession of drug paraphernalia,[5] and prohibitive offensive weapons.[6] These convictions arose after Appellee took part in several drug transactions which involved the sale of cocaine to a confidential informant who entered Appellee's residence on various occasions in April of 2007 to purchase the contraband while police officers waited outside.

¶ 3 Though the distinguished trial judge sets forth a lengthy statement of facts in his Opinion filed pursuant to Pa.R.A.P. 1925(a), we have reiterated only a portion thereof which is relevant to our discussion herein:

As a result of the investigation, Police Officer Simmons obtained a search and

1. In their briefs, both parties indicate they are appealing from an Order entered on February 21, 2008; however, this was the date on which Appellee was sentenced, and though the sentencing court set forth its sentence in what it termed "Order(Sentencing)," the appeal is properly taken from the judgment of sentence.

2. 35 P.S. § 780–113(a)(30).

3. 18 Pa.C.S.A. § 7512(a).

4. 35 P.S. § 780–113(a)(16).

5. 35 P.S. § 780–113(a)(32).

6. 18 Pa.C.S.A. § 908(a).

seizure warrant for 5506 Walnut Street. (N.T. 01/07/08, p. 24).

* * *

At approximately 5:45 p.m., [on April 30, 2007], Police Officer Simmons, members of SWAT, and members of the Narcotics Field Unit executed the search warrant. Appellee was seen leaving from the rear bedroom and arrested in the hallway. (N.T. 01/07/08, pp. 25–28).

Recovered from the rear bedroom was one sandwich bag containing five clear plastic bags, each containing fifty small [Z]iploc packets, one clear plastic packet stamped with an apple, containing sixteen smaller clear [Z]iploc plackets. (N.T. 01/07/08, p. 25). All of these packets contained crack cocaine. (N.T. 01/07/08, p. 25). Also recovered in the rear bedroom was another clear sandwich bag, containing ten smaller [Z]iploc packets which contained a green weed and seed substance, marijuana, and two digital scales with cocaine residue. (N.T. 01/07/08, pp. 25–26). Also recovered in the back rear room was a plate with two spoons, one razor blade, and one strainer, all coated with cocaine. (N.T. 01/07/08, p. 45). A clear package containing marijuana was also confiscated from on top of the plate. (N.T. 01/07/08, p. 45). Two yellow packets and two clear packets containing cocaine were also recovered.

In addition, from the rear bedroom, the police recovered one black Hulk .357 Magnum handgun that was found to be loaded with six live rounds, one .9 millimeter found to be loaded with six live rounds, one twelve-gauge shotgun that was loaded with four rounds, and one twenty-gauge sawed-off shotgun that was loaded with one round. (N.T. 01/07/08, p. 45–46).

Recovered from the rear kitchen was [sic] seventy-two Xanax pills, twenty-one Percocets in an amber pill bottle, forty eight Percocets in a blue bottle, and ten jars of codeine syrup. (N.T. 01/07/08, p. 26).

Recovered from the rear of the apartment was [sic] two hundred twelve dollars of United States currency from the kitchen; forty-one dollars from the coffee table; and one hundred eighty-six dollars from the dresser. (N.T. 01/07/08, p. 43).

Also recovered from Appellee's apartment was [sic] a lease, three letters, one bank statement, and one children's work identification card which were all in the name of Wayne McKibben. (N.T. 01/07/08, p. 26). Also confiscated from the apartment was [sic] a Verizon cell phone with the telephone number 215–749–0435, two letters in the name of Country, one coffee mug displaying the word "Country," and a check for three hundred thirty-seven dollars payable to Wayne McKibben. (N.T. 01/07/08, p. 27). Also recovered was one plastic [Z]iploc packet containing numerous new and unused blue and clear [Z]iploc packets. (N.T., 01/07/08. p. 27).

Recovered from the Appellee was four hundred twenty-nine dollars ($429), three hundred of which was the prerecorded buy money from that day. (N.T. 01/07/08, p. 30). Also recovered from the Appellee were five keys which fit the various doors on the first floor. (N.T. 01/07/08, p. 30).

The weight of the drugs was 17.35 grams of cocaine and 25 grams of oxycodine.

Trial court Opinion, filed 6/24/08, at 5–8.[7]

¶ 4 Following a hearing held on February 21, 2008, Appellee was sentenced. On

---

7. Country is Appellee's nickname.

March 18, 2008, the Commonwealth filed a timely notice of appeal along with its Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b). In its brief, the Commonwealth raises the following question for our review: "Did the lower court impose an illegal sentence by declining to impose the statutorily required mandatory minimum term?" Brief for Appellant at 1.

■■■■ ¶ 5 At the outset we note "a defendant or the Commonwealth may appeal as of right the legality of the sentence." *Commonwealth v. Boyd,* 941 A.2d 1, 3 (Pa.Super.2007) (quoting *Commonwealth v. Ausberry,* 891 A.2d 752, 754 (Pa.Super.2006) and 42 Pa.C.S. § 9781(a)) *appeal denied Commonwealth v. Boyd,* 597 Pa. 710, 951 A.2d 1159 (2008). In addition:

> Generally, a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence. *Commonwealth v. Leverette,* 911 A.2d 998, 1002 (Pa.Super.2006). Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. *Commonwealth v. Ausberry,* 891 A.2d 752, 754 (Pa.Super.2006). Our standard of review over such questions is *de novo* and our scope of review is plenary. *See Leverette,* 911 A.2d at 1002. . . . *
>
> [T]he Statutory Construction Act of 1972 ("Act") . . . 1 Pa.C.S.A. § 1501 *et seq* . . . instructs, in relevant part that, 'the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly, and '[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' 1 Pa.C.S.A. § 1921(a), (b). A court should resort to other considerations, such as the General Assembly's purpose in enacting a statute, only when

> the words of a statute are not explicit. 1 Pa.C.S.A. § 1921(c). The Act also provides that '[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage,' but that 'technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be construed according to such peculiar and appropriate meaning.' 1 Pa.C.S.A. § 1903(a). Finally, in ascertaining the General Assembly's intent, we may presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(1).

*Commonwealth v. Diamond,* 945 A.2d 252, 256 (Pa.Super.2008) *appeal denied,* 598 Pa. 755, 955 A.2d 356 (2008).

¶ 6 42 Pa.C.S.A. § 9712.1(a) provides that "[a]ny person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a minimum sentence of at least five years of total confinement." Herein, the trial court stated in its Opinion "[i]t is my belief that this statute did not necessarily mean that someone engaged in drug trafficking would be subjected to a mandatory minimum of five years if he possessed a gun in his residence. My assumption is that this statute is designed to prevent the proximity of guns and drugs in an area or zone where drugs are actively being sold from seller to buyer; and not necessarily to a case where the gun is in proximity to a 'stash' FN7 somewhere in someone's resi-

dence, but removed from where the inter-action is taking place." FN8 The trial court, therefore, concluded that "[i]n this case, the evidence only demonstrates that sales took place somewhere on the other side of Appellee's front door inside his apartment. There was no evidence that any drugs sales ever took place in the rear bedroom, where the stash of drugs and guns were located ... If, however, the statute is meant to cover any firearm physically near a stash then I should be reversed. All of the guns were in the bedroom, and there was a significant amount of controlled substances possessed with the intent to deliver also in the bed-room." Trial Court Opinion, filed 6/24/08, at 8–9.[8]

¶ 7 The trial court also noted near the conclusion of trial that "it seems to me that regardless of these particular verdicts that [Appellee] is in fact in close proximity and the firearms are within his reach, and he's in close proximity to firearms while the crime of possession with intent to deliver is taking place." N.T., 1/7/08, at 66. More-over, the court further stated "I'll listen to any further argument at sentencing, but I also think that regardless of the fact that I found him not guilty of PIC because of an intent, the mandatories are still met by the fact that it's within close proximity to the controlled substances or within his reach. It's essentially right there." N.T., 1/7/08, at 68. Finally, prior to sentencing, the sentencing court clarified that "the testi-mony was clear that the drugs and guns

were taken from a rear bedroom-type room." N.T., 2/21/08, at 3.; nevertheless, the court sentenced Appellant without ap-plying 42 Pa.C.S.A. § 9712.1(a) to an ag-gregate term of three (3) years to six (6) years imprisonment, a $15,000 fine, and $1,625 in court costs.[9]

¶ 8 In an Opinion filed on August 4, 2008, a few months after Appellee had been sentenced, a panel of this Court con-sidered whether evidence which had been presented at trial was sufficient to estab-lish that firearms were in close proximity to drugs such that 42 Pa.C.S.A. § 9712.1 applied. After determining the Common-wealth established the appellant had con-structive possession of two firearms, this Court engaged in the following relevant discussion before determining the appel-lant was subject to the mandatory sentenc-ing provisions of 42 Pa.C.S.A. § 9712.1:

> [T]here was no evidence presented that, at the time of the offense, appellant was in actual physical possession or con-trol of a firearm. In addition, there was no evidence that either firearm was 'within reach.' The .9mm in the closet of the bedroom where appellant and Perez were sleeping was concealed in-side a box on a shelf. (Notes of testimo-ny, 4/27/07 at 24; 7/2/07 at 5–6.) The .38 was in an adjacent bedroom, inside the pocket of a black leather jacket hanging in the closet. (Notes of testi-mony, 7/2/07 at 6–7.) Therefore, for Section 9712.1 to apply, the Common-wealth had to demonstrate that one or

---

8. In its footnote 7, the trial court indicates "By 'stash' I mean a cache of controlled sub-stances which are possessed with the intent to deliver, but that are stored apart from a smaller supply kept in the possession of the seller to provide a short-term supply for im-mediate sales." The trial court states in Foot-note 8 that "[t]his appears to be a case of first impression." In light of *Sanes, infra,* the trial court was correct in making the latter asser-tion.

9. Appellant received this prison term because he was in possession of 17.35 grams of co-caine. The sentencing court also sentenced Appellant to six (6) months to twenty-four (24) months for the prohibited offensive weapons charge and imposed no further penalty on the use of communication facility and possession of drug paraphernalia charges. (N.T., 2/21/08, at 25–26).

both of the firearms was in "close proximity" to the controlled substance; and, in fact, this is the theory on which the Commonwealth proceeded.

As already stated, the issue is one of first impression in Pennsylvania; "close proximity" is not defined in the statute, and there is no decisional precedent interpreting that phrase in regards to [sic] Section 9712.1. There is, however, case law interpreting identical language with respect to Pennsylvania's Forfeiture Act.[FN8] The Forfeiture Act provides that where currency is found in close proximity to controlled substances which are possessed unlawfully, there is a rebuttable presumption that such currency is proceeds derived from selling a controlled substance in violation of the Controlled Substance Act. *Commonwealth v. Giffin*, 407 Pa.Super. 15, 595 A.2d 101, 104 (1991), citing 42 Pa.C.S.A. § 6801(a)(6)(ii).

FN8. Controlled Substances Forfeiture Act, 42 Pa.C.S.A. § 6801.

In *Giffin*, the police seized bags of marijuana found in the defendant's kitchen, as well as drug paraphernalia consisting of a glass bong from underneath her couch. *Id.* at 105. At the time of her arrest, an officer observed the defendant attempting to hide a roll of cash totaling $850 in her couch, near the glass bong. *Id.* The officers also recovered the additional sum of $411 from a jacket lying on the defendant's coffee table. *Id.*

This court held that as the currency was found in the same room as the glass bong, and in close proximity to the marijuana packaged for sale and stored in the defendant's kitchen, the money was presumed to be derived from the sale of controlled substances. *Id.*, citing 42 Pa. C.S.A. § 6801(a)(6)(i)(A).[FN9] In *Giffin*, then, examining identical language elsewhere in the Sentencing Code, this court

held that currency found in the living room was in "close proximity" to controlled substances found in the kitchen, for purposes of the Forfeiture Act. *Compare Commonwealth v. Heater*, 899 A.2d 1126 (Pa.Super.2006), *appeal denied*, 592 Pa. 779, 926 A.2d 973 (2007) (Commonwealth sustained its initial burden of establishing a nexus between the money seized and a violation of the Controlled Substance Act where, *inter alia*, bags of marijuana and drug paraphernalia were recovered from the defendant's bedroom and second-floor closet, and $38,310 in cash was found in a safe in the defendant's kitchen, commingled with some prerecorded bills from controlled drug buys; holding that the evidence supported forfeiture of all monies seized from the residence).

FN9. The *Giffin* court went on to hold that the defendant presented sufficient evidence to rebut the presumption raised by the discovery of the money in close proximity to the illegal controlled substance; the lower court found credible the defendant's evidence that the funds seized were derived from legitimate sources. *Id.* at 106. Therefore, the money was not subject to forfeiture.

The Commonwealth has also directed our attention to several federal cases examining Section 2D1.1(b)(1) of the federal sentencing guidelines, which provides for an upward adjustment in a defendant's sentence where the defendant possessed a firearm or other dangerous weapon during the commission of the offense. USSG, § 2D1.1, 18 U.S.C.A. The guidelines state that the enhancement should be applied where the weapon is "present," unless it is clearly improbable that the weapon was connected with the offense.[FN10] The federal courts have found that the adjustment applies where firearms are located in "close proximity" to narcotics the defendant was in the business of distributing. *United States v. Green*, 889 F.2d

187, 189 (8th Cir.1989), citing *United States v. Jones*, 875 F.2d 674, 676 (8th Cir.1989), *cert. denied*, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

FN10. We acknowledge that following the United States Supreme Court's decisions in *Apprendi, Blakely,* and *Booker,* the federal sentencing guidelines have been recognized as unconstitutional. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See United States v. Harris,* 325 F.Supp.2d 562, 564 (W.D.Pa.2004) ("the federal sentencing guidelines are an unseverable and unconstitutional whole"). We discuss the federal cases interpreting Section 2D1.1(b)(1) merely by way of factual comparison, since there is no binding precedent on this issue in Pennsylvania.

In *Green,* law enforcement officers executing a search warrant recovered approximately 69 grams of cocaine base packaged in 62 individual plastic bags, most of which was found in one room of Green's apartment. *Green, supra* at 187. In Green's bedroom, a different room from the one where the majority of the cocaine was found, officers discovered an unloaded single-shot .22 caliber handgun in plain view inside the headboard of Green's bed. *Id.* The court in *Green* determined the district court did not err in applying the sentencing enhancement, where Green was in possession of the firearm in the "same place" where she was conducting drug transactions and the presence of the firearm created an additional hazard. *Id.* at 189.

In *United States v. Williams*, 10 F.3d 590 (8th Cir.1993), officers executing a search warrant found cocaine and drug paraphernalia on the defendant's kitchen table. *Id.* at 592. When asked if there were any guns in his apartment, the defendant informed officers that there was a firearm located inside a black briefcase on the second floor. *Id.* at 592–593. The officers found a black briefcase containing a loaded .9mm semi-automatic firearm and $2,500 in cash on the second floor. *Id.* at 593.

In holding that the district court did not err in granting a two-point sentencing enhancement for possession of a firearm during the commission of the offense pursuant to Section 2D1.1(b)(1) of the federal guidelines, the *Williams* court examined the temporal and geographical proximity between the firearm and the cocaine, and found that the distance between Williams and the firearm was "minimal." *Id.* at 596. Citing *Green, supra,* the court in *Williams* specifically found that the loaded firearm on the second floor was located in "close proximity" to the cocaine in the kitchen; and therefore, a sufficient nexus existed between the cocaine and the firearm to support the enhancement. *Id.,* citing also *United States v. Baker,* 907 F.2d 53, 55 (8th Cir.1990) (increase in base offense level where weapon found in bedroom and cocaine found in bathroom).

Turning now to the facts of the case *sub judice,* Investigator Leporace testified that the cocaine was found in a sandwich baggie on top of the dresser in the bedroom. (Notes of testimony, 7/2/07 at 4.) The closet where the loaded .9mm handgun was located was approximately 6–8 feet from the dresser. (Id. at 5.) We determine, as a matter of law, that this satisfies Section 9712.1's requirement that the firearm be in "close proximity" to the controlled substance. Although the firearm was contained in a box on a shelf in the closet, it was loaded and readily accessible to appellant. Our decision today also comports with the General Assembly's intent in enacting Section 9712.1, which was to provide a deterrent for those who are dealing in drugs and using firearms. (HB 447, Legislative Journal–Senate,

November 19, 2004 at 2386.) As Senator Piccola remarked:

It is a severe problem particularly in the cities of the Commonwealth, and it will act as a deterrent for those who deal in drugs and use firearms. It does not, and I repeat this, it does not provide for the mandatory minimum if the individual is only possessing drugs. It requires that they be dealing in drugs and in possession of a firearm before the mandatory minimum would apply. *Id.*

The trial court found that both firearms, including the unloaded .38 special revolver inside the black leather jacket hanging in the closet of the children's bedroom adjacent to the bedroom where the cocaine was found, were in close proximity to the controlled substance for purposes of Section 9712.1. (Notes of testimony, 7/2/07 at 21.) However, as the Commonwealth notes, this court need not determine whether the second firearm in the children's bedroom was likewise in close proximity to the cocaine. (Commonwealth's brief at 11 n. 2). Any discussion of the issue would be *dicta,* since we have already concluded that the location of the first firearm, 6–8 feet away, satisfied the statute.

Having determined that appellant constructively possessed the firearms, and that the .9mm handgun located in the bedroom closet approximately 6–8 feet from the controlled substance was in "close proximity" to the controlled substance so that the trial court did not err in applying Section 9712.1 to appellant's sentence, we will affirm the judgment of sentence.

*Commonwealth v. Sanes,* 955 A.2d 369, 374–377 (Pa.Super.2008) appeal denied 972 A.2d 521, 2009 WL 1508760 (Pa.2009) (underline added).

¶ 9 Herein, the Commonwealth notified Appellee in the Bill of Information of its intent to proceed under the mandatory minimum sentencing provisions of 42 Pa. C.S.A. § 9712.1. *See* Information No. CP–51–CR0008571–2007. Appellee admits in his brief that the trial court convicted Appellee of 35 P.S. § 780–113(a)(30) and also of possessing an offensive weapon, a sawed-off shotgun, in violation of 18 Pa. C.S.A. § 908. Furthermore, the trial court concluded Appellee was in possession of several automatic weapons and another shotgun which along with the sawed-off shotgun were stored in close proximity to the drugs he was convicted of possessing with the intent to deliver; notwithstanding, Appellee adopts the reasoning of the trial court and argues that the mandatory sentence of 42 Pa.C.S.A. § 9712.1 should not apply as there is no evidence that Appellee had been in physical possession or control of the firearm or in close proximity to the controlled substance at the time of the offense. Brief for Appellee at 4. Appellee claims that because the confidential informant did not indicate he saw firearms, was admitted into the apartment only for about five minutes during each transaction, and the firearms were secured in a back bedroom, though there is no evidence the confidential informant was anywhere but in the first room of the home, that the mandatory sentencing provision is inapplicable herein. Brief for Appellee at 4–5. We disagree.

¶ 10 At trial, Officer Gregory Barber testified he was part of the team that executed a search and seizure warrant at 5506 Walnut Street and was the arresting officer. Officer Barber explained that when he entered Appellee's home he observed the SWAT team escorting Appellee "from near the rear bedroom in the hallway." N.T., 1/7/08, at 29–30. Officer Nathan London testified he recovered cocaine, marijuana and handguns in plain view in the back bedroom of Appellee's residence. Specifically, Officer London described the weapons as follows: "one black Hulk .357 Magnum handgun that

was found to be loaded with six-live rounds; one .9 millimeter found to be loaded with six-live-rounds; one 12–gauge shotgun that was loaded with four rounds; and one 20–gauge sawed-off shotgun, that was loaded with one round." Officer London indicated those weapons "had to be made safe." N.T., 1/7/08 at 45–46.

¶ 11 This testimony supports the trial court's own statement prior to sentencing that he found as a fact "that with respect to the back room, there were guns in close proximity to the drugs that were possessed with the intent to deliver." N.T., 2/21/08, at 20; therefore, in light of *Sanes, supra,* the trial court's concern with whether the drug transactions were effected in close proximity to the firearms is legally irrelevant as the weapons were loaded and readily accessible to Appellee and found in the same room as the drugs. As such, we vacate the judgment of sentence and remand for resentencing consistent with 42 Pa.C.S.A. § 9712.1.

¶ 12 Judgment of sentence VACATED. Case REMANDED for re-sentencing. Jurisdiction RELINQUISHED.